# United States Court of Appeals
## For the First Circuit

No. 22-1979

UNITED STATES OF AMERICA,

Appellee,

v.

MICHAEL RAND,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Landya B. McCafferty, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Gelpí, Circuit Judges.

Noreen McCarthy, with whom The McCarthy Law Firm was on brief,
for appellant.
Aaron G. Gingrande, Assistant United States Attorney, with
whom Jane E. Young, United States Attorney, was on brief, for
appellee.

February 23, 2024

**GELPÍ, Circuit Judge**.  Defendant-Appellant Michael Rand ("Rand") was indicted with, and pleaded guilty to, one count of distributing a controlled substance in violation of 21 U.S.C §§ 841(a)(1) and (b)(1)(C).  Rand was sentenced to time served followed by 36 months of supervised release.  Shortly thereafter, Rand was cited for four violations of his supervised release, resulting in a revocation hearing.  At the revocation hearing, Rand was sentenced to 24 months of imprisonment followed by 24 months of supervised release.  Rand timely appealed his sentence on the grounds that it was procedurally and substantively unreasonable.  We affirm.

## I. Background

### A. Original Offense

On August 31, 2020, a grand jury indicted Rand with one count of distributing a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  While incarcerated and awaiting trial, Rand completed the Therapeutic Community substance use treatment program at the Strafford County Department of Corrections.  On December 13, 2021, Rand pleaded guilty to the indictment.  On March 23, 2022, while awaiting sentencing, the district court released Rand to participate in Turning Point, a residential substance use treatment program.  Rand successfully

completed the program. These were the first substance use treatment programs that Rand had ever completed.

On August 4, 2022, Rand's sentencing hearing took place. The presentence report ("PSR") determined that Rand's offense level was 13, reduced down from 16 due to his acceptance of responsibility. See U.S.S.G. § 3E1.1(a) and (b). His criminal history category was IV and the advisory sentencing guideline range for the offense was 33-41 months. The PSR detailed Rand's lifelong history of drug use which began when he was a teenager. On March 15, 2022, Rand filed a motion for variance from the sentencing guideline range noting his success in the substance use treatment programs and requesting time served. The Government filed a sentencing memorandum requesting a sentence at the low end of the sentencing guideline range, requesting the district court depart downwards as to the criminal history category. The district court sentenced Rand to time served followed by 36 months of supervised release.

**B. Supervised Release Violations**

On September 9, 2022, Rand's probation officer petitioned for a warrant alleging four violations of Rand's supervision conditions. Rand later admitted to each of the violations. First, on August 11, 2022, Rand lied to his probation officer, violating the standard condition of supervised release that he answer questions posed by his probation officer truthfully.

Rand claimed he contracted COVID to excuse the fact that he had not reported to his assigned probation officer nor reported where he was living and working since he had been granted supervised release. This was a Grade C violation with a sentencing guideline range of 6-12 months.

Second, on September 1, 2022, Rand violated his supervision conditions by committing a federal, state, or local crime: Rand illegally possessed and used cocaine, methamphetamine, and fentanyl. This was a Grade B violation with a sentencing guideline range of 12-18 months. Third, that same day, Rand left his reported residence and failed to notify his probation officer, resulting in another violation of supervised release. This was a Grade C violation with a sentencing guideline range of 6-12 months.

Fourth, Rand relapsed and failed to enter an inpatient substance use treatment program despite being instructed to do so by his probation officer, resulting in his final violation of a special probation condition. This was a Grade C violation with a sentencing guideline range of 6-12 months. Rand was arrested and taken into custody. While in custody, Rand was unable to participate in the jail's substance use treatment program due to an administrative error.

## C. Revocation Hearing

On December 7, 2022, the district court held Rand's revocation hearing. As noted, Rand admitted to each of the violations. The sentencing guideline ranges for someone with Rand's criminal history are 6-12 months of imprisonment for a Grade C violation and 12-18 months of imprisonment for a Grade B violation. The Government proposed twelve months of imprisonment for the purpose of ensuring a sufficient deterrent effect on Rand. The Government further noted that twelve months would provide Rand time to avail himself of the prison's rehabilitative programming to help ensure that he would be "better equipped this time around to meet the challenges of sobriety." Rand, in turn, requested a 6-month sentence of imprisonment followed by additional supervised release so that he could participate in additional residential substance use treatment programs. At the revocation hearing, Rand spoke on his own behalf stating that 12 months of imprisonment was too long for his first violation and that he wanted the chance to participate in a substance use treatment program since he was unable to do so while awaiting the revocation hearing.

The district court rejected both the Government's and Rand's proposed sentences, instead sentencing Rand to 24 months of imprisonment, the statutory maximum, followed by 24 months of supervised release. The district court explained its rationale by noting that "the fact that this [was Rand's] first violation d[id]

not in any way outweigh the nature of the violation." The district court then mentioned Rand's initial sentencing stating that it was impressed with Rand's success in the substance use treatment programs. The district court was originally persuaded by Rand's allocution and the mitigating circumstances of his inauspicious past, determining that time served was the appropriate sentence once Rand completed the Turning Point program.

The district court gave an account of the four violations and noted that even though the possession of controlled substances was the higher grade violation, "the lying indicate[d] the danger to the community." The district court explained that 12 months of imprisonment was not enough to deter Rand and would not protect the public. Thus, the district court concluded that a maximum sentence was necessary after Rand lied and absconded immediately after appearing before the district court, which had credited Rand's recovery efforts in its original sentencing. The district court stated that it "considered each factor in [§] 3583(e)" and decided that a 24-month sentence of imprisonment was sufficient but not greater than necessary.

## II. Discussion

On appeal, Rand argues that his sentence was both procedurally and substantively unreasonable. Procedurally, Rand argues that the sentence imposed was unreasonable because: (1) the district court plainly erred when it failed to adequately explain

on the record, and in writing, the reasons for imposing a sentence above the recommended sentencing guideline range, (2) the district court plainly erred when it considered impermissible factors under 18 U.S.C. § 3583(e) because it focused on factors that fall under 18 U.S.C. § 3553(a)(1)(A), and (3) the district court plainly erred when it followed the prosecutor's urging to impose a lengthy sentence for rehabilitative purposes.  Substantively, Rand argues that the sentence was unreasonable because: (1) there was no plausible sentencing rationale for exceeding the applicable sentencing guideline range, (2) Rand's most serious offense was based on a single positive drug test and his own admission of having relapsed, (3) the sentence goes against the statutory presumption against incarcerating a defendant for a single positive drug test, and (4) neither the prosecutor sought nor the PSR recommended a sentence above the sentencing guideline range. We take each of these arguments in turn and, for the reasons stated below, affirm the district court's revocation sentence.

"With respect to sentencing determinations, reasonableness has both a procedural and a substantive dimension." United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014) (citing United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)).  Procedurally, we consider errors omitting an adequate explanation of the rationale for a variant sentence, failure to consider pertinent sentencing factors, and the determination of a

- 7 -

sentence based on clearly erroneous facts.  Del Valle-Rodríguez, 761 F.3d at 176.  Substantively, we consider the length of the sentence "in light of the totality of the circumstances."  Id.

### A. Procedural Reasonableness

### 1. Standard of Review

Typically, we "review a sentence following revocation of supervised release for abuse of discretion."  United States v. Alejandro-Rosado, 878 F.3d 435, 438-39 (1st Cir. 2017).  However, when a defendant does not object to the procedural reasonableness of his sentence below, as is the case here, the challenge is unpreserved, and therefore reviewed for plain error.  Id. at 439. Plain error review is "a steep climb for defendants on appeal." Id.  To prevail, a defendant must prove "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

### 2. The Sentence Was Procedurally Reasonable

We conclude that Rand has failed to demonstrate that the district court's explanation came close to clear and obvious error. To begin, Rand's argument that the district court failed to adequately explain the reasoning for imposing a sentence above the sentencing guideline range does not hold water.  When assessing

procedural reasonableness, we examine whether the district court considered the appropriate sentencing factors and whether the sentence was adequately explained "to allow for meaningful appellate review." Gall v. United States, 552 U.S. 38, 50 (2007). "We approach these arguments mindful that deference to the trial court is a lineament of appellate review of federal criminal sentences." Del Valle-Rodríguez, 761 F.3d at 176. The "sentencing guidelines are only 'the starting point and initial benchmark' for shaping a sentence." Id. (quoting Gall, 552 U.S. at 49).

When a district court varies upward, it must justify the variance. Del Valle-Rodríguez, 761 F.3d at 176. Statutorily, at the time of sentencing, a court must "state . . . the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is outside of the sentencing guideline range, "the specific reason for the imposition of a sentence" must be stated and "which reasons must also be stated with specificity in a statement of reasons form." 18 U.S.C. § 3553(c)(2). However, even though an upward variance should be explained, the district court is only required to provide a "plausible and coherent rationale" for the variance. Del Valle-Rodríguez, 761 F.3d at 177 (determining that the district court articulated an adequate rationale where it expounded upon its assessment of the risk of future criminal activity, the need to protect the public, and the defendant's history of failing to comply with conditions). Rand

argues that the district court failed to explain the rationale of the sentence "with specificity," however, under plain error review, the district court only needs to "touch[] upon" the factors used to support the sentence. United States v. Márquez-García, 862 F.3d 143, 147 (1st Cir. 2017).

Here, the district court provided a "plausible and coherent rationale" for the upward variance. Del Valle-Rodríguez, 761 F.3d at 177. The lie to Turning Point about COVID, the fact that Rand did not contact his probation officer after sentencing, and the lie to his probation officer about COVID were all discussed as factors driving the sentencing decision. In fact, the district court explained that the lying to probation and Turning Point about COVID were even more concerning than the Grade B violation for possession of controlled substances. The district court noted that the fact that Rand lied to both his substance use treatment program and his probation officer, coupled with his absconding from his treatment, indicated a high likelihood of recidivism and a danger to the community. The district court went on to explain that the suggested 12-month sentence of imprisonment would not sufficiently deter Rand or protect the public. Rand argues that because the gravity of the lies he told was reflected in the grade such an offense was given by the Sentencing Commission and his likelihood of recidivism was already captured by his criminal history category, the sentencing guideline range already accounted

- 10 -

for the factors on which the district court relied.  Accordingly, he contends that the district court did not adequately explain why this particular lie posed a greater risk of danger to the public or a higher risk of recidivism than any other lie that would constitute a Class C violation and so did not adequately explain the upward variance.  See United States v. Zapete-Garcia, 447 F.3d 57, 60-61 (1st Cir. 2006).  But the district court here did not merely double count Rand's lies and abscondment.

Here, the district court expressly concluded that the upward variance was because of "[t]he combination of the lying and the absconding right after [Rand] had appeared in front of [the district court] [for the original sentencing]."  In discussing the factors that led to its conclusion, the district court specifically noted that just "two days after the sentencing hearing" Rand left Turning Point with the intent to "leave for good," lied to Turning Point about his reasons for not returning, and lied to his probation officer.  (Emphasis added).  It is clear from this explanation that the district court was concerned with the totality of these individual incidents, all of which occurred in rapid succession over a brief span of time and so soon after the original sentencing hearing and the start of Rand's supervised-release term.  Thus, we cannot conclude on this record that the district court plainly erred by merely double counting individual incidents already factored into the sentencing guideline range calculation.

- 11 -

Further, Rand has failed to demonstrate that the district court affected his substantial rights when it failed to provide the written statement of reasons form. See 18 U.S.C. § 3553(c)(2). "[R]emand is required only if the sentence was 'imposed as a result of'" the error. Williams v. United States, 503 U.S. 193, 202 (1992) (emphasis in original). "If 'the district court would have imposed the same sentence' even without the error, it was harmless." United States v. Tavares, 705 F.3d 4, 25 (1st Cir. 2013) (quoting Williams, 503 U.S. at 202-03). Here, due to its oral explanation, it is clear that the district court would have imposed the same sentence in writing. See United States v. Vázquez-Martínez, 812 F.3d 18, 25-26 (1st Cir. 2016) (holding error harmless after concluding that the sentence would be the same in written form as it was in oral form). Because the lack of a writing did not affect Rand's substantial rights, and was therefore harmless, the argument that the lack of a writing is plain error fails.

Next, Rand's argument that the district court relied on prohibited factors in its sentencing determination also fails under plain error review. While explaining the sentence, the district court stated that it "considered each factor in [§] 3583(e)[,]" which on its own is "entitled to significant weight." United States v. Santiago-Rivera, 744 F.3d 229, 233 (1st Cir. 2014). The district court mentioned the seriousness of Rand's

- 12 -

violations, his past criminal history, and the need for deterrence and community protection. This explanation was not plainly erroneous. Although the district court did mention Rand's conduct and characterized it as contemptuous to the court, it made clear that the sentencing decision was primarily focused on deterrence and community protection. A sentencing court may "consider a defendant's history of non-compliance with conditions of supervised release" when imposing a sentence, as it did here. United States v. Vargas-Dávila, 649 F.3d 129, 132 (1st Cir. 2011). A district court is not forbidden to consider "other pertinent section 3553(a) factors." Id. In fact, § 3553(a)(2)(B) requires a sentencing court to consider deterrence, consequently inviting consideration of the defendant's history with supervised release. See id. Therefore, the district court did not plainly err.

Lastly, Rand argues that the district court plainly erred when, towards the end of the hearing, it commented that Rand "need[ed] structured programming" in order to advance his recovery. According to Rand, this comment indicates the court imposed the sentence "for rehabilitation purposes." This argument also fails. However, this discussion was in response to Rand's request for substance use treatment, not as a justification for the sentence. The district court was also responding to Rand's counsel's request that he be placed in a substance use treatment program because Rand "need[ed] a very serious structured program."

Further, "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." Tapia v. United States, 564 U.S. 319, 334 (2011). Error is only found when the district court "impose[s] or lengthen[s] a prison sentence . . . to promote rehabilitation." Id. at 335. Here, the mere discussion of a structured substance use treatment program, with no indication that the treatment program was "the driving force behind[] or a dominant factor in" imposing or lengthening the sentence, cannot be grounds for reversal. United States v. Vázquez-Méndez, 915 F.3d 85, 88 (1st Cir. 2019).

## B. Substantive Reasonableness

### 1. Standard of Review

We apply the abuse of discretion standard to preserved challenges to the substantive reasonableness of criminal sentences. United States v. Vargas-Martinez, 15 F.4th 91, 102 (1st Cir. 2021). "A defendant who, by advocating for a particular sentence, communicates to the trial judge his view that a longer sentence is 'greater than necessary' has thereby informed the court of the legal error at issue in an appellate challenge to the substantive reasonableness of the sentence." Holguin-Hernandez v. United States, 140 S. Ct. 762, 766-67 (2020). A defendant who advocates for a shorter sentence that would prove sufficient preserves their substantive unreasonableness claim. See id. at

767.  Here, Rand argued for a shorter sentence at the revocation hearing, therefore preserving the claim of error, requiring an abuse of discretion standard.

## 2. The Sentence Was Substantively Reasonable

We evaluate substantive unreasonableness claims under the "totality of the circumstances" to determine if there was a "plausible sentencing rationale and a defensible result." Martin, 520 F.3d at 92.  "The length of an increased sentence is necessarily a judgment call and, within wide limits, deference is due to the trier's on-the-spot perceptions." Vargas-Dávila, 649 F.3d at 131.  We will vacate a sentence for substantive unreasonableness only "if it 'falls outside the expansive boundaries' of the universe of reasonable sentences." Márquez-García, 862 F.3d at 147 (quoting Martin, 520 F.3d at 92).

First, Rand argues that the sentencing rationale offered was not plausible because the district court recounted the factors already considered by the Sentencing Commission. However, as noted above, the district court discussed multiple specific factors and instances to justify its upward variance.  The district court raised concerns over the dangerousness of Rand to the community, and the need to deter him from future criminal activity.  The district court went on to note that Rand, almost immediately after being released for time served, lied to and absconded from treatment, did not contact his probation officer, and once in

- 15 -

contact after being tracked down, lied to the probation officer, and disregarded the direction to admit himself into treatment. The district court noted that it was "[t]he combination of the lying and the absconding right after [Rand] had appeared in front of [the district court]" that justified the maximum sentence. Here, based on the justification provided by the district court, the rationale was plausible. See Vargas-Dávila, 649 F.3d at 131 (affirming an upward variant for a violation of supervised release conditions based on "past behavior of the offender and the other realities of the situation"); Márquez-García, 862 F.3d at 147-48 (affirming an upward variance based on the "short time that had elapsed between the appellant's release from prison and his commission of a new . . . crime; the serious (and repetitive) nature of the new offense; the danger presented to the community . . . and the need for deterrence").

Rand next argues that the district court punished him for being candid with his probation officer about his relapse and that the sentence imposed was based on a single positive drug test. But this is not true. The district court credited Rand for his honesty about his relapse with his probation officer, albeit after he was tracked down. It also made clear that the lying about having contracted COVID and absconding was the driving force for the maximum sentence imposed, not the relapse. No indication was made that Rand was being punished as a result of admitting to his

relapse. In addition, the sentence imposed was not the result of a single positive drug test, but rather the result of a totality of the circumstances. See United States v. Santiago-González, 825 F.3d 41, 48 (1st Cir. 2016) (explaining that totality of the circumstances is used for determining substantive reasonableness). As noted, Rand was sentenced based on four total violations which included lying and absconding from treatment and supervision. Each violation, particularly the lying regarding COVID and absconding, was taken into consideration, weakening Rand's argument that he was sentenced based on a "single positive drug test."

Further, Rand argues that 18 U.S.C. § 3565(b)(4) should apply, requiring revocation of probation and resentencing only if the defendant tests positive for illegal controlled substances more than three times over the course of a year. Seeing as Rand only had one positive drug test, he argues that he cannot be resentenced based on 18 U.S.C. § 3565(b)(4). As this court has said before, "[t]he fairly obvious flaw in this argument is that the statute . . . is about probation, not about supervised release." United States v. Mandarelli, 982 F.2d 11, 12 (1st Cir. 1992) (emphasis in original). "[P]robation is an alternative to prison" whereas "[s]upervised release is part of a prison sentence, to be served after imprisonment." Id. (first quoting 18 U.S.C. § 3561(a); then quoting 18 U.S.C. § 3583(a)) (emphasis in original) (internal quotation marks omitted). "The statutes treat

the two similarly, but not identically." Mandarelli, 982 F.2d at 12 (comparing § 3565(a)(2) -- setting forth that the "maximum sentence for probation violation is maximum for underlying conviction" -- with § 3583(e)'s instruction that the "maximum sentence for supervised release violation depends on seriousness of violation, not on underlying conviction"). Rand also argues he was punished for being addicted to controlled substances which runs counter to Robinson v. California, 370 U.S. 660 (1962), where the Supreme Court deemed this rationale unconstitutional. This argument is misplaced as Robinson addressed a statute making addiction to narcotics a criminal offense. 370 U.S. at 660. Here, Rand was in violation of supervised release for possession of controlled substances, lying to probation and his treatment center, absconding from treatment, and moving from his residence without notifying probation, not simply for use of controlled substances. The argument that Rand was sentenced simply for the positive drug test, or simply for being addicted to controlled substances, is inaccurate and therefore fails.

Rand's final argument, that the sentence is substantively unreasonable because the district court did not follow the recommendation of the prosecutor and did not provide an adequate rationale, lacks merit. The district court is not bound to follow the recommendations of either party when imposing a sentence as it is the district court's role to ultimately determine

what sentence is suitable.  See United States v. Vixamar, 679 F.3d 22, 32 (1st Cir. 2012) (explaining the district court's role in revocation hearings and resentencing).  The district court noted that it had considered both parties' arguments, the violation report, its knowledge of Rand's original sentencing hearing, and each factor of 18 U.S.C. § 3583(e).  It was well within the district court's discretion, after adequately explaining the upward variance, to impose such a sentence.  See id.  Therefore, the district court did not abuse its discretion in sentencing Rand to the statutory maximum based on the totality of the circumstances.

## III. Conclusion

Because we conclude that the revocation sentence imposed was procedurally and substantively reasonable, the district court's sentence is

**Affirmed**.