# United States Court of Appeals
## For the First Circuit

No. 23-1292

UNITED STATES OF AMERICA,

Appellee,

v.

CALVIN MENDES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Montecalvo, Selya, and Rikelman,
Circuit Judges.

Syrie D. Fried and Good Schneider Cormier Fried & Brooks on brief for appellant.
Joshua S. Levy, Acting United States Attorney, and Alexia R. De Vincentis, Assistant United States Attorney, on brief for appellee.

July 11, 2024

**SELYA**, **Circuit Judge**.  Defendant-appellant Calvin Mendes challenges his upwardly variant sentence, which was imposed following the revocation of a term of supervised release.  He contends that his sentence is procedurally flawed because, inter alia, the district court failed to adequately explain its rationale and improperly considered an arrest that did not result in a conviction.  Concluding, as we do, that the appellant's sentence was adequately explained, was not based on an improper appraisal of the appellant's earlier arrest, and was otherwise within the bounds of the district court's discretion, we affirm.

## I

We briefly rehearse the relevant facts and travel of the case.

### A

On March 6, 2020, the appellant pleaded guilty to charges of conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, 400 grams or more of fentanyl, cocaine, cocaine base, oxycodone, and marijuana; possession with intent to distribute fentanyl; and being a felon in possession of a firearm and ammunition.  See 21 U.S.C. § 846; 21 U.S.C. § 841(a)(1); 18 U.S.C. § 992(g)(1).  The United States District Court for the District of Massachusetts sentenced him to serve concurrent thirty-month terms of immurement, to be followed by

three years of supervised release.  His supervised release term commenced in September of 2020.

The appellant repeatedly violated the conditions of his supervised release.  As a result, the district court revoked his supervised release no fewer than three times.  The first revocation occurred on February 11, 2022, after the appellant admitted to four violations of his supervised release conditions.  The district court sentenced him to a single day of imprisonment (for which he was credited with time served) and imposed a new nineteen-month term of supervised release.

The second revocation took place on December 15, 2022 (after the appellant admitted to six more violations of his conditions of supervised release).  The district court again imposed an incarcerative sentence of one day (for which he was credited with time served), along with a new twelve-month term of supervised release.

In the weeks following the second revocation, the appellant violated several conditions of his supervised release. This conduct resulted in a third revocation hearing, held on March 23, 2023.  The probation office alleged that the appellant had violated six categories of his conditions of release.  We briefly describe the conduct underlying the alleged violations before turning to the district court's disposition of them.

Violation I alleged that the appellant distributed obscene matter in December of 2022, thus committing another crime. The government subsequently withdrew Violation I because it concluded that the appellant's conduct did not constitute a crime under Massachusetts law. In line with this concession, the district court agreed not to consider this violation.

Violation II alleged that the appellant tested positive for controlled substances on four occasions and used substitute urine in connection with a drug test on yet another occasion. These acts were said to have occurred between December of 2022 and January of 2023. The appellant admitted to this violation.

Violations III and IV alleged that the appellant failed to work regularly at a lawful occupation and failed to be truthful with his probation officer about his occupation. In January of 2023, the appellant's former employer verified that the appellant had last worked in June of 2022. When questioned, the appellant reported that he was still employed, even though he had lost his job. In the end, however, the appellant admitted to both violations.

Violation V alleged that the appellant failed to refrain from committing another crime. The genesis of this violation arose on February 3, 2023, when the appellant was arrested in a house. The police discovered that the appellant was staying in the house, along with another person who had previously been convicted of a

felony.  They found controlled substances in the house (cocaine and Suboxone) — including in the room where the appellant was staying.  They also found paraphernalia that was indicative of drug distribution.

Violation VI arose from the same arrest as Violation V. It alleged that the appellant failed to refrain from associating with any persons engaged in criminal activity or convicted of a felony.  The underpinning for this charge comprised evidence that the appellant lived with another person who had been convicted of a felony.  The appellant admitted to this violation.

**B**

The day before the third revocation hearing, the appellant filed a motion to continue on the ground that he did not have enough time to investigate Violation V.  The district court denied the motion, but agreed not to consider this violation on the merits.  The government did not object but informed the district court that there was a "slight hiccup," because the removal of Violation V would "drastically change[] the guideline sentencing range that the [c]ourt would be considering and the government's recommendation for sentencing."  The court replied that it understood that "the guideline range would be restricted," but asked:  "there is no restriction for this [c]ourt to upwardly depart, is there?"  The government responded — without any objection from the appellant — that no such restriction existed.

It subsequently clarified that the maximum available sentence that the court could impose was sixty months.

Although the guideline sentencing range (GSR) for the violations was five to eleven months, the government argued for a thirty-month incarcerative sentence with no new supervised release term. Such a sentence was appropriate, the government suggested, because the appellant's several revocation proceedings had shown a "repeated pattern of disrespect to the Probation Office and disregard for the conditions that [the court] ha[d] imposed." To support this suggestion, the government pointed to the appellant's continued drug use in the two months following his second revocation and to Violations III and IV. These actions, the government submitted, indicated that the appellant chose "just kind of [to] continue to go on about his business in the way that he deemed appropriate" and not adhere to the terms of his supervised release. As a result, the government posited that a significant prison sentence was warranted to promote respect for the law.

In further support, the government also pointed to Violations I and V. The government, of course, had agreed that neither of these would be considered on the merits in the revocation hearing. Although it conceded that it was not "proceeding" with Violation V, the government nonetheless asserted that the presence of drugs and drug paraphernalia found during the

appellant's arrest was especially concerning given that the appellant had originally been convicted of distributing drugs. So, too, the government argued that, even though the conduct underlying Violation I was not unlawful, it was "very concerning" and should still be considered an "aggravating factor" in the court's sentencing decision.

The appellant objected to the government's reliance on Violations I and V. The government's argument concerning the February 3 arrest, the appellant suggested, was tantamount to asking the district court to consider the substance of the allegation in Violation V, even though this violation was "not part of this hearing." When the district court replied that it "didn't hear the government say anything about violation No. 5," the appellant replied that consideration of Violation VI should not include information about what was found at the house during the arrest.

When all was said and done, the government recommended a thirty-month incarcerative sentence, and the appellant opposed the recommendation. Such a sentence, the appellant argued, was "excessive," especially given that the evidence clearly established no more than that the appellant lived with someone who had been convicted of a felony. As an alternative, the appellant proposed a term of incarceration of twelve months and one day. In support, he pointed to the probation office's initial sentencing

recommendation of eleven months. And in his allocution, the appellant urged the court to consider his mental health struggles, background, and lack of housing. Although he knew that the drug dealing that led to his original conviction was wrong, he "just did something to . . . help [him] and [his] daughter in that situation at the time."

In pronouncing sentence, the district court noted that — despite the fact that "the Probation Department ha[d] tried to help [the appellant]" — the appellant had repeatedly violated the terms of his supervised release. Nor was "this . . . the first time that [the appellant had] appeared before [the court] for revocation. It's not the second time. It's the third time." The court emphasized the gravity of the appellant's underlying drug offense, stressing the dangerousness of distributing fentanyl — a drug that is "killing people every day." The appellant's explanations for distributing fentanyl, the district court continued, were no excuse: "I don't care what excuse you have. I don't care that you're homeless. You can't distribute Fentanyl amongst our population and expect to stay out of jail." The court concluded by noting that, perhaps with an "extended time of incarceration," the appellant would "get the message" that, if he wanted to be involved in his daughter's life, "[he] better resolve that [he] will not further deal in drugs, especially in Fentanyl, and that if [he is] ever on supervised release again, that [he]

will comply to the letter with any conditions that are imposed, which [he had] not done."

In the end, the court sentenced the appellant to a term of immurement of thirty months with no supervised release to follow. This timely appeal ensued.

## II

The appellant argues that the district court's upwardly variant sentence was procedurally flawed for four reasons. First, he argues that the sentence was procedurally flawed because the district court "did not explain why the large degree of upward departure or variance from the guideline range was warranted." Second, he argues that the district court unreasonably relied on unproven criminal conduct. Third, he argues that the district court impermissibly took into account community-based considerations concerning the dangers of fentanyl. Fourth, he argues that the district court's sentence constituted an "[u]nauthorized [u]pward [d]eparture [u]nder USSG §7B1.4." We consider each of these arguments in turn.

## A

Before reaching the substance of the appellant's arguments, we reflect briefly upon the applicable standards of review. Claims of sentencing error, if preserved, are ordinarily reviewed for abuse of discretion. See United States v. Leach, 89 F.4th 189, 195 (1st Cir. 2023). In this case, the parties dispute

whether the appellant preserved any or all of his procedural challenges. This distinction typically has consequences: unpreserved claims of sentencing error are ordinarily reviewed only for plain error. See id.

Here, however, we need not resolve this contretemps: under either standard, the government prevails. To confirm this conclusion, we assay the appellant's claims for abuse of discretion (the standard of review that is most favorable to the appellant). See United States v. Bermúdez-Meléndez, 827 F.3d 160, 166 (1st Cir. 2016).

In reviewing for abuse of discretion, "we assay the district court's factfinding for clear error and afford de novo consideration to its interpretation and application of the sentencing guidelines." United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013). "The touchstone of abuse of discretion review in federal sentencing is reasonableness." United States v. Vargas-Dávila, 649 F.3d 129, 130 (1st Cir. 2011). A sentence is procedurally reasonable if the district court committed no procedural sentencing errors, such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines

range." United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).

**B**

The appellant first argues that the district court failed adequately to explain how his conduct fell outside of the mine-run of violations such that it justified an upward variance of nineteen months. Aside from noting that the appellant had "flouted [his] supervised release conditions" and "ha[d] not gotten the message" that he needed to comply with these conditions, the district court's only justification for its variance — according to the appellant — was that this hearing was the appellant's third revocation hearing and that the probation office "no longer ha[d] anything left." This justification, the appellant says, was insufficient, especially given that "the farther a sentence varies from the advisory range, the more explicit the explanation for the variance must be."

We agree that the district court must adequately explain both the magnitude and the extent of a variance. See United States v. Flores-Nater, 62 F.4th 652, 655 (1st Cir. 2023). As we previously have stated, "[w]hen a district court varies upward, it must justify the variance," United States v. Rand, 93 F.4th 571, 577 (1st Cir. 2024), and ensure that its justification "is sufficiently compelling to support the degree of the variance," Gall, 552 U.S. at 50. Even so, the district court need not supply

- 11 -

an exhaustive rationale; rather, it is only required to provide a "plausible and coherent" one. Rand, 93 F.4th at 577 (quoting United States v. Del Valle-Rodríguez, 761 F.3d 171, 177 (1st Cir. 2014)). Measured against this benchmark, we think that the district court's explanation in this case was more than sufficient: the court adequately explained both why it was imposing an upwardly variant sentence and the extent of the variance.

The driving force was the appellant's repeated violations of the conditions of his supervised release. As the district court emphasized on several occasions, this was not the first time that the appellant had flouted the conditions of his supervised release. The appellant had "not once, not twice, but three times" faced revocation for numerous violations. The district court reasoned that a higher sentence was warranted because "it is clear that [the appellant had] not gotten the message that [he has] to comply with" the terms of the supervised release. The district court expressed its hope that the extended term of incarceration would make the appellant "get the message and understand that, if [he] want[s] to see and have a part in the life of that 8-year-old daughter of [his], [he] better change the way [he] live[s]."

Repetition of unlawful conduct is often deserving of greater punishment than an isolated instance of such misconduct. See United States v. Centariczki, 98 F.4th 381, 385-86 (1st Cir.

2024); United States v. Soto-Soto, 855 F.3d 445, 451 (1st Cir. 2017); cf. William Painter, Chaucer Newly Painted (1623) ("They that deceive me once I them beshrow, They that deceive me twice I say the same also, But if they shall deceive me any moe, For that my selfe not them I will beshrow."). A sentencing court does not abuse its discretion when it relies on a defendant's repeated supervised release violations to impose an upward variance. Here, the appellant was given a succession of opportunities to reform his ways but repeatedly failed to do so. Under these circumstances, the district court's explanation of its justification for imposing an upwardly variant sentence was adequate. So, too, this chiaroscuro record of noncompliance with supervised release conditions justified the extent of the upward variance. See Centariczki, 98 F.4th at 385-86; Soto-Soto, 855 F.3d at 451.[1]

Our holding in Soto-Soto illustrates the point. See 855 F.3d at 451. There, the defendant pleaded guilty to being a felon in possession of a firearm and was sentenced to an eighteen-month term of immurement, followed by three years of supervised release.

---

[1] To be sure, palpable misconduct may serve to justify a range of upward adjustments. Within the guardrails of reasonableness, the dimensions of the particular enhancement are for the sentencing court. See Flores-Machicote, 706 F.3d at 20; United States v. Stone, 575 F.3d 83, 97 (1st Cir. 2009). We conclude — without serious question — that the extent of the upward variance in this case was sufficiently justified.

See id. at 446-47. While on supervised release, he was brought before the district court three times for failing to comply with the conditions of his release. See id. at 447-48. At the final revocation hearing, the district court sentenced him to the statutory maximum of two years. See id. at 448. This sentence substantially exceeded the top of the applicable GSR (eleven months). See id. We rejected the defendant's assertion that the sentence was substantively unreasonable and that there was no plausible rationale for the sentence, because the defendant's course of conduct as a serial violator of his supervised release conditions "gave the district court ample reason to believe that only a substantial sentence would deter him from his wayward practices." Id. at 450.[2]

We conclude that the district court provided a "plausible and coherent rationale" for the upward variance by emphasizing the appellant's serial noncompliance with the conditions of his supervised release. Rand, 93 F.4th at 577 (quoting Del Valle-Rodríguez, 761 F.3d at 177). We further conclude that the extent of the upward variance — though

---

[2] That the issue in Soto-Soto was one of substantive reasonableness does not diminish its persuasive force. "[W]e have explained before that an adequate explanation for an upwardly variant sentence and the 'plausible rationale' element of the test for substantive reasonableness 'are almost always two sides of the same coin.'" United States v. Ortiz-Pérez, 30 F.4th 107, 113 (1st Cir. 2022) (quoting United States v. Valle-Colón, 21 F.4th 44, 50 (1st Cir. 2021)).

substantial — was commensurate with the extent of the appellant's serial violations. The appellant accumulated no fewer than fourteen violations since the start of his original term of supervised release — several of which occurred within mere weeks of a prior revocation. The district court, therefore, did not abuse its discretion when it concluded that such blatant and frequent disregard for its conditions warranted a steep upward variance (nineteen months).

In an effort to blunt the force of this reasoning, the appellant cites our decisions in United States v. Ortiz-Rodríguez, 789 F.3d 15, 18 (1st Cir. 2015), and United States v. Rivera-Berríos, 968 F.3d 130, 136-37 (1st Cir. 2020). In each instance, we held a sentence unreasonable because the district court predicated its decision to impose an upwardly variant sentence on factors already accounted for in the guideline calculation. See Ortiz-Rodríguez, 789 F.3d 15 at 19-20; Rivera-Berríos, 968 F.3d at 136-37.

The case before us is a horse of a different hue. In imposing the upwardly variant sentence, the district court unambiguously relied on the appellant's continuing disregard of the conditions of his supervised release. The applicable sentencing guidelines do not account for either the number of times a defendant violates the terms of his supervised release or the number of previous revocations of supervised release. See USSG

- 15 -

§7B1.4.  Consequently, we conclude that the district court did not abuse its discretion when it imposed the upwardly variant sentence.

## C

The appellant next argues that his sentence was procedurally flawed because the district court relied on unproven criminal conduct.  There is a "strong[] . . . inference," the appellant complains, that the district court not only believed that the appellant had committed a felony drug offense that led to his arrest in February of 2023 (notwithstanding the fact that there was no conviction at the time) but also took this conduct into account when imposing its sentence.  To support this inference, the appellant highlights the fact that the district court criticized his dealings in fentanyl and "excoriated him for being a drug dealer in the present."  (Emphasis in original.)

This plaint lacks force.  As the record makes clear, the district court criticized the appellant's past dealings in fentanyl.  It was those past dealings — for which the appellant had been sentenced to a prison term — to which the district court was referring when it reprimanded the appellant for committing "a serious drug offense."  Seen in context, the reference was not to the February 2023 arrest.

The district court's explicit mention of fentanyl bolsters our conclusion.  After all, the record before the district court indicated that the drugs involved in the appellant's 2023

arrest were cocaine and Suboxone — not fentanyl.  It follows, then, that the appellant's complaint that the district court used an unproven allegation as a building block in imposing an upwardly variant sentence is unsupported by the record.

The district court's determination in this case is plainly distinguishable from the determination in United States v. Marrero-Pérez, 914 F.3d 20, 22 (1st Cir. 2019), on which the appellant relies.  There, the court rested its decision to impose a longer sentence on arrests, police reports, and warrants despite the fact that no conviction had resulted.  See id.  We vacated the sentence because the district court erroneously equated this unsubstantiated material with evidence of the defendant's guilt. See id. at 24.

The case at hand is readily distinguishable.  The record offers no indication that the district court attributed the criminal activity alleged in connection with the February 2023 arrest to the appellant.  The court considered the details of the arrest solely for their relevance to Violation VI — the appellant's failure to refrain from associating with a person engaged in criminal activity.  The limited nature of this use is made manifest by the district court's responses to the appellant's objection to the government's mention of the February 2023 arrest.  The court observed, "I didn't hear the government say anything about violation No. 5, and your client admitted to violation No. 6."

Because the court did not use the February arrest as evidence that the appellant was guilty of the misconduct described in Violation V, the appellant's claim of error founders.

**D**

The appellant next argues that the district court improperly relied on community-based considerations concerning the dangerousness of fentanyl. This argument does not withstand scrutiny: the district court simply did not look to community-based considerations when it fashioned the variance.

We previously have stated that a sentencing court may properly consider community-based considerations in imposing a sentence. See Flores-Machicote, 706 F.3d at 22-23. An example is a decision that identifies "the location where the offense occurred" and goes on to discuss whether the affected community was "experiencing a greater-than-customary incidence of related crime." United States v. Flores-González, 86 F.4th 399, 408 (1st Cir. 2023) (en banc); see Flores-Machicote, 706 F.3d at 22-23.

Here, the district court did not invoke any community-based considerations. Importantly, its discussion of the dangerousness of fentanyl did not rely on any heightened danger to the specific community where the appellant committed his original crime. Instead, it merely discussed the general danger associated with the drug. What is more, it is luminously clear that the district court referred to the dangers of fentanyl not as the

foundation for an upwardly variant sentence but, rather, to admonish the appellant for abusing the "break" that he had received with respect to his original offenses and for repeatedly violating the terms of his supervised release.

The court emphasized the serious harms associated with fentanyl in an effort to ensure that the appellant bore the burden of his failed attempt to excuse his previous dealings in fentanyl and his subsequent repeated violations of the terms of his supervised release. That emphasis was well within the ambit of the district court's discretion.

**E**

The appellant's final claim of error — that the district court engaged in an "[u]nauthorized [u]pward [d]eparture [u]nder USSG §7B1.4" — is equally unpersuasive. He constructs this argument around the premise that the district court exhibited a willingness to consider Violation V, even though it had previously stated that it would not do so. This receptiveness, the appellant says, was evident when the district court asked the government if "there is no restriction for th[e] [c]ourt to upwardly depart" from the guidelines even without considering Violation V.

The appellant reads the record through rose-colored glasses. The record makes pellucid that the district court's question to the government was merely intended to assure the government that it could still advocate for a thirty-month sentence

without Violation V. If anything, this question shows that the district court was already inclined to impose a longer sentence regardless of Violation V. Because we conclude that the district court did not consider Violation V in sentencing, the appellant's argument stumbles at the starting gate.

The appellant's subsequent contention that the district court improperly imposed an upward departure fares no better. To begin, there is a difference between a departure and a variance. A departure "is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines." United States v. Nelson, 793 F.3d 202, 206 (1st Cir. 2015) (quoting United States v. Aponte-Vellón, 754 F.3d 89, 93 (1st Cir. 2014)). A variance, by contrast, "result[s] from a court's consideration of the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a)." Id. (quoting Aponte-Vellón, 754 F.3d at 93).

Here, it is clear that the district court imposed an upward variance — and not a departure. After all, the district court's intent to vary upward is evidenced by its explicit reference to section 3553(a). See United States v. Oquendo-Garcia, 783 F.3d 54, 57 (1st Cir. 2015) (holding that district court's explicit invocation of section 3553(a) during explanation of defendant's sentence suggested intent to vary rather than depart). This is the case notwithstanding the district court's unfortunate

use of the term "depart."  See Nelson, 793 F.3d at 206-07 (holding that deviation from GSR was variance, even though district court used term "depart").  This conclusion is also buttressed by the fact that the probation office, in the Presentence Investigation Report, explicitly stated that it could not identify any grounds that would warrant a departure.  As such, we have little difficulty concluding that the district court imposed a variance — not a departure — and that it did not abuse its discretion when it chose to impose an above-guidelines sentence of thirty months.[3]

## III

We need go no further.  For the reasons elucidated above, the judgment of the district court is

**Affirmed**.

---

[3] We add, moreover, that the appellant's suggestion that an upward departure following the revocation of supervised release is authorized only it if falls within the application notes of section 7B1.4 is without merit.  See USSG §7B1.4.