# United States Court of Appeals
## For the First Circuit

No. 20-2165

UNITED STATES OF AMERICA,

Appellee,

v.

JEREMY HUGH ROGERS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch and Barron, Circuit Judges,
Burroughs,* District Judge.

James M. Mason and Handelman & Mason LLC on brief for
appellant.
Donald E. Clark, Acting United States Attorney, and Noah Falk,
Assistant United States Attorney, on brief for appellee.

November 4, 2021

---

* Of the District of Massachusetts, sitting by designation.

**BURROUGHS, District Judge.** Jeremy Hugh Rogers pleaded guilty to one count of unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Rogers to seventy-two months of incarceration. On appeal, Rogers challenges his sentence, arguing that the district court misapplied the Sentencing Guidelines when it imposed a four-level offense increase under U.S. Sent'g Guidelines Manual § 2K2.1(b)(6)(B) and that the sentence was substantively unreasonable. Finding that there was no Guidelines error and that the sentence was substantively reasonable, we affirm.

## I. Facts and Prior Proceedings

Because Rogers pleaded guilty, we draw the relevant facts from the undisputed portions of the presentence investigation report ("PSR") and the transcript of the sentencing hearing. See United States v. Benoit, 975 F.3d 20, 21 (1st Cir. 2020)(citing United States v. Bermúdez-Meléndez, 827 F.3d 160, 162 (1st Cir. 2016)).

A.   The Offense and Arrest

On August 3, 2019, twenty-two people were killed and another twenty-four were injured during a mass shooting at a Walmart store in El Paso, Texas. On August 12, 2019, less than two weeks after the El Paso shooting, Rogers used one of his Facebook accounts to send a video of himself to a fellow Facebook user. In that video, a mask-clad Rogers loads a magazine into an

AR-15 assault rifle and says "man I'm tired of this shit, I'm going to fucking Walmart." That same day, Rogers sent another Facebook user a different video of an AR-15, which he calls "Bella." In that video, Rogers is heard asking "do you like my new Walmart killer?" and saying that because he was bored, he had purchased bullets and shotgun shells.

A few days later, on August 17, 2019, Rogers sent a photograph of himself dressed in camouflage and holding a rifle to a Facebook group "conversation." Along with the image, he posted the text "[w]ho's with me?" The next day, Rogers posted another image to Facebook that portrayed gloved hands holding an AR-15 and depicted a person at the entrance of a Walmart store with the text "Match begins in 2 [seconds]."[1]

On or around August 21, 2019, more than one of the recipients of Rogers' Facebook posts reported them to law enforcement, apparently concerned that Rogers would actually carry out a shooting at a Walmart. In response, law enforcement consulted with Walmart and decided that the Walmart store in Thomaston, Maine, which was the closest to Rogers' last known location, should be closed an hour early.

Rogers was arrested at his residence on August 22, 2019.

---

[1] At his November 19, 2020 sentencing hearing, Rogers asserted that the image, which he had downloaded from the internet, was actually from a video game and not an image of him.

At a voluntary, post-arrest interview, Rogers said that the videos and images were intended to be jokes, that he did not actually plan to go to Walmart, and that he would always possess a gun, regardless of his probation status. During the interview, Rogers also discussed an incident where he had wanted to kill a person who, in his view, had attempted to take his daughter away from him.

Rogers was initially detained by Maine state authorities. After his detention, the following statements were found on the walls of his cell: "I AM a terrorist"; "Death I Bring"; "The Walmart Terrorist was here!"; and "I love murder." Rogers' cellmate also told his probation officer that he was concerned that Rogers would act violently because Rogers had expressed a desire to shoot people and obsessed over a video of a mass shooting at a mosque in New Zealand.

B.    The Plea and Sentencing

On February 20, 2020, Rogers pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). As part of the plea agreement, the parties agreed to recommend a base offense level of twenty, with a two-level offense enhancement under U.S. Sent'g Guidelines Manual § 2K2.1(b)(1)(A) and a three-level reduction for acceptance of responsibility pursuant to U.S. Sent'g Guidelines Manual § 3E1.1. In the PSR, the U.S. Probation officer agreed with the parties'

- 4 -

recommendations but also applied a four-level increase under U.S. Sent'g Guidelines Manual § 2K2.1(b)(6)(B) because Rogers "possessed a firearm in connection with another felony offense." Specifically, the Probation officer determined that a preponderance of the evidence demonstrated that Rogers had committed the offense of Terrorizing With A Dangerous Weapon in violation of Maine law, Me. Rev. Stat. Ann. tit. 17-A, § 210(1)(A)-(B).[2] Maine's Terrorizing statute provides that:

> A person is guilty of terrorizing if that person in fact communicates to any person a threat to commit or to cause to be committed a crime of violence dangerous to human life, against the person to whom the communication is made or another, and the natural and probable consequence of such a threat, whether or not such consequence in fact occurs, is:
> **A.** To place the person to whom the threat is communicated or the person threatened in reasonable fear that the crime will be committed[;] . . . . or
> **B.** To cause evacuation of a building, place of assembly or facility of public transport or to cause the occupants of a building to be moved to or required to remain in a designated secured area.

Me. Rev. Stat. Ann. tit. 17-A, § 210(1)(A)-(B)(2020).

---

[2] In addition to the federal indictment, Rogers was also charged in Maine state court on three felony counts: (1) Terrorizing under Me. Rev. Stat. Ann. tit. 17-A, § 210(1)(B); (2) Terrorizing With A Dangerous Weapon under Me. Rev. Stat. Ann. tit. 17-A, § 210(1)(A); and (3) Illegal Possession Of A Firearm under Me. Rev. Stat. Ann. tit. 15, § 393(1)(A-1). At the time of the sentencing hearing, these charges were still pending in state court, but it was understood that Rogers would plead guilty to some of the charges later that day.

Rogers was sentenced on November 19, 2020. His objection to the four-level increase under U.S. Sent'g Guidelines Manual § 2K2.1(b)(6)(B) was overruled by the district court, which found that the increase applied because (1) the presence of a firearm in the videos and images demonstrated how Rogers would carry out his threats, so "the gun clearly [was] at the heart of the facilitation of the underlying felony offense"; and (2) the videos and images caused alarm or fear in others, as required by the Terrorizing statute, because at least one recipient was concerned enough to contact law enforcement and law enforcement closed the Thomaston Walmart early. The district court ultimately calculated Rogers' offense level as twenty-three, with a criminal history category of II, and an advisory guideline sentencing range of fifty-one to sixty-three months of incarceration.

After hearing from both parties, the district court sentenced Rogers to an above-Guidelines sentence of seventy-two months of incarceration. In reaching this sentence, the district court stated that it had considered all the factors set forth in 18 U.S.C. § 3553(a) and noted that the "most important" factors were "the nature and circumstances of the offense, the history, personal characteristics and record of [Rogers], the seriousness of the offense, the need for just punishment[,] and the need to protect the public." The district court articulated its concerns about Rogers' history of threats to others (including a principal

and teacher), his problems managing his anger, his fascination with firearms, and public safety.

## II. Discussion

When reviewing sentencing challenges, "[w]e first consider whether the sentence is procedurally reasonable, and then consider whether it is substantively reasonable." United States v. Hassan-Saleh-Mohamad, 930 F.3d 1, 6 (1st Cir. 2019) (quoting United States v. Rodríguez-Reyes, 925 F.3d 558, 562-63 (1st Cir. 2019)).

## A. Procedural Reasonableness

When reviewing the reasonableness of a sentencing enhancement, "we review the district court's legal rulings anew, its factfinding for clear error, and its application of the guidelines to the case on a 'sliding scale' -- with the scrutiny cranked up the more law-driven the court's decision is." United States v. Matthews, 749 F.3d 99, 105 (1st Cir. 2014). "The clear error standard requires 'a strong, unyielding belief that a mistake has been made.'" United States v. Newton, 972 F.3d 18, 20 (1st Cir. 2020) (quoting United States v. Oliveira, 907 F.3d 88, 92 (1st Cir. 2018)). "[T]he sentencing court's choice among rational but competing inferences cannot be clearly erroneous." Matthews, 749 F.3d at 105.

Rogers' procedural reasonableness argument focuses on the district court's application of the four-level offense

increase under U.S. Sent'g Guidelines Manual § 2K2.1(b)(6)(B). In relevant part, U.S. Sent'g Guidelines Manual § 2K2.1(b)(6)(B) allows for a four-level offense increase "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense . . . ." U.S. Sent'g Guidelines Manual § 2K2.1(b)(6)(B) (U.S. Sent'g Comm'n 2018).

> The enhancement applies, then, if the court finds that the government proved two things by a preponderance of the evidence: one, that the defendant committed another felony offense . . . and two, that he possessed a firearm in connection with that other offense—a phrase read broadly under our caselaw . . . .

Matthews, 749 F.3d at 105 (emphasis in original)(internal quotation marks omitted). "Either direct or circumstantial evidence will do, with the sentencing court free to draw commonsense inferences from the evidence." Id.

Rogers first argues that the district court erred in finding that his actions constituted a threat under Maine's Terrorizing statute, Me. Rev. Stat. Ann. tit. 17-A, § 210(1), because the videos and images were privately sent to his Facebook friends and the content was not directed at a particular party.[3] Considering the record as a whole, there is enough evidence to

---

[3] When terrorizing conduct in violation of Me. Rev. Stat. Ann. tit. 17-A, § 210(1)(A) occurs "with the use of a dangerous weapon," as it did here, the offense qualifies as a Class C felony under Maine law. See Me. Rev. Stat. Ann. tit. 17-A, § 1604(5)(A)(2020); Me. Rev. Stat. Ann. tit. 17-A, § 210(1)(A)(2020).

support the district court's finding that Rogers violated the Terrorizing statute, and his contentions are therefore without merit. By its plain language, the Terrorizing statute requires only that "the natural and probable consequence" of the threat is that "the person to whom the threat is communicated" is placed "in reasonable fear that the crime will be committed." Id. § 210(1)(A) (2020). Although Rogers asserts otherwise, the statute does not require that the threats be directly communicated to the ultimate victim. See State v. Michaud, 473 A.2d 399, 403-04 (Me. 1984) (holding that an indictment for terrorizing under Me. Rev. Stat. Ann. tit. 17-A, § 210(1) was sufficient when it alleged that the natural and probable consequence of a death threat communicated to a third party, and not the intended victim, was to place the third party in "reasonable fear that said crime would be committed").

Here, at least one of the recipients of Rogers' Facebook posts was concerned enough to contact law enforcement about them. Law enforcement, in turn, informed Walmart about the posts, which resulted in the Thomaston store closing early. Significantly, these events all took place against the backdrop of a mass shooting at a Walmart that had occurred just days before. Therefore, the evidence supports the conclusion that the natural and probable consequence of Rogers' actions was that the recipients would fear that he would commit a violent act. Thus, the district court did not err in finding that Rogers violated the Terrorizing statute.

Rogers next argues that U.S. Sent'g Guidelines Manual § 2K2.1(b)(6)(B) was improperly applied because the evidence is insufficient to establish a connection between his threats and a firearm. We have no trouble concluding that the district court's factual finding on this point was not clearly erroneous. As we have previously held, "[t]he key question is whether a sufficient nexus exists between the weapon and the [additional felony]. If a firearm somehow aids or facilitates, or has the potential to aid or facilitate, the commission of another offense, application of [U.S. Sent'g Guidelines Manual § 2K2.1(b)(6)(B)] is warranted." United States v. Paneto, 661 F.3d 709, 717 (1st Cir. 2011) (second alteration in original) (citations and internal quotation marks omitted). The record demonstrates that a firearm featured prominently in each of the videos and images that Rogers shared on Facebook. For example, in one video he loads the AR-15 and says "I'm going to fucking Walmart." In another, he displays the AR-15 and asks "do you like my new Walmart killer?" These facts are more than sufficient to support the finding that the firearm magnified the threatening nature of Rogers' communications and ultimately caused a recipient to reasonably fear that Rogers was likely to commit a violent act. In other words, the firearm facilitated and aided the terrorizing conduct. See id.

Accordingly, for the reasons described above, the district court did not err in applying the four-level offense

increase pursuant to U.S. Sent'g Guidelines Manual § 2K2.1(b)(6)(B).

B.    Substantive Reasonableness

Challenges to the substantive reasonableness of a sentence are reviewed for abuse of discretion. United States v. Bruno-Campos, 978 F.3d 801, 808 (1st Cir. 2020) (citing Holguin-Hernandez v. United States, 140 S. Ct. 762, 766 (2020)). "A sentence is substantively reasonable if the district court provided a 'plausible sentencing rationale and reached a defensible result.'" United States v. Gomera-Rodríguez, 952 F.3d 15, 20 (1st Cir. 2020) (quoting United States v. Coffin, 946 F.3d 1, 8 (1st Cir. 2019)). When the district court imposes an above-Guidelines sentence, "an adequate explanation is required." Bruno-Campos, 978 F.3d at 809. Although "the greater the extent of a variance, the more compelling the sentencing court's justification must be," a sentence well beyond the guidelines range may still be reasonable. United States v. Tanco-Pizarro, 892 F.3d 472, 484 (1st Cir. 2018) (quoting United States v. de Jesús, 831 F.3d 39, 43 (1st Cir. 2016)).

Rogers argues that his seventy-two-month sentence was substantively unreasonable because the district court's rationale for the above-Guidelines sentence focused on his terrorizing activity, which was already accounted for in the U.S. Sent'g Guidelines Manual § 2K2.1(b)(6)(B) analysis.

We disagree. Rogers interprets the district court's reasoning too narrowly. The district court explicitly stated the reasons for its sentence, which went beyond the facts relevant to Rogers' terrorizing conduct. As laid out above, see supra Section I.B, the district court expressed serious concerns with Rogers' troubling threats to others, including death threats, which occurred before the terrorizing conduct considered in the U.S. Sent'g Guidelines Manual § 2K2.1(b)(6)(B) analysis, as well as the need to ensure the public's safety. Accordingly, the district court's sentence is plausible, defensible, and substantively reasonable.

## III. Conclusion

For the reasons given, we find that the sentence imposed was reasonable.

Affirmed.