# United States Court of Appeals
## For the First Circuit

No. 22-1601

UNITED STATES,

Appellee,

v.

RAYMOND LILLY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Gelpí, Lynch, and Howard,
Circuit Judges.

James M. Mason and Handelman & Mason LLC on brief for
appellant.
Lindsay B. Feinberg, Assistant United States Attorney, and
Darcie N. McElwee, United States Attorney, on brief for appellee.

April 14, 2023

**LYNCH**, **Circuit Judge**.  Raymond Lilly pleaded guilty to one count of possession of firearms by a felon under 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1]  In this appeal, he challenges the procedural reasonableness of his 30-month sentence, arguing that the district court relied upon a clearly erroneous finding of fact regarding his use of a firearm on a previous occasion.  We affirm.

## I.

## A.

"Because this appeal follows a guilty plea, 'we draw the facts from the plea colloquy, the unchallenged portions of the presentence investigation report [(PSR)], . . . the transcript of the sentencing hearing,' and the parties' sentencing memoranda and exhibits."  United States v. Ahmed, 51 F.4th 12, 17 (1st Cir. 2022) (alteration and omission in original) (quoting United States v. De la Cruz, 998 F.3d 508, 509 (1st Cir. 2021)).

Lilly is a convicted felon who is prohibited from possessing firearms.  At the time of the relevant events, Lilly was thirty-six years old and lived in Dresden, Maine, with his fifteen-year-old daughter and father.

---

[1]    References to § 924(a)(2) in this opinion are to the provision as it existed at the time of Lilly's charged conduct. The penalty provision for § 922(g) has since been amended and moved to 18 U.S.C. § 924(a)(8).  See United States v. Minor, 63 F.4th 112, 118 n.4 (1st Cir. 2023) (en banc).

On May 16, 2020, Lilly came home and found a twenty-one-year-old man (whom we call "Doe") in his daughter's bedroom. Brandishing a weapon, Lilly held Doe captive in the house until the police, who had been summoned, arrived. When the police arrived, Lilly and Doe gave different accounts of what type of weapon Lilly had wielded. Doe told the police that the weapon was a shotgun; Lilly denied that it was a shotgun and instead stated that it was a club. The police advised Doe that he might face criminal charges but allowed him to leave.

On June 12, 2020, police returned to Lilly's home in response to a call stating that Lilly's daughter was threatening to harm herself. When the officers arrived at the house, they found Lilly's daughter holding a loaded handgun. An officer was able to retrieve the handgun. Lilly's daughter told the officers that she had found the handgun lying on the couch. When questioned by the police, Lilly denied ownership of the handgun and stated that someone else had given it to his daughter years earlier. He also told the officers that there were other firearms in the house, but that they belonged to Lilly's father and were stored in a secure room.

Lilly's daughter was then transported to a hospital for medical assessment, and Lilly followed. At the hospital, Lilly spoke further with officers and acknowledged that he knew he was prohibited from possessing firearms. He maintained that the

firearms were not his and that he did not have a key to the locked room where they were kept.

Officers returned to Lilly's house and found Lilly's father, who consented to their searching the residence. Lilly was not present. During their search of the house, the officers discovered three firearms in a locked bedroom: a loaded rifle, a loaded double-barrel shotgun, and a bolt-action shotgun. Lilly's father told the officers that Lilly had installed the locks to the bedroom. Lilly's father further stated that he had never seen the two shotguns, and that the rifle was his own but that he was surprised that it was loaded. He added that he also had never seen the loaded handgun that the officers had retrieved from Lilly's daughter earlier that day.

Later that day, an officer pulled Lilly over for driving with a suspended license. The officer asked Lilly about the firearms, and Lilly again maintained that he did not have a key to the locked bedroom where the rifle and shotguns were stored. Lilly was then arrested and charged under state law with possession of a firearm by a prohibited person. In Lilly's possession at the time of his arrest was a set of keys, which proved to match the locks to the room where the firearms had been located.

**B.**

In April 2021, Doe testified before a grand jury concerning the May 16, 2020 incident. He reiterated his previous

- 4 -

statement to the police, attesting that Lilly had held him captive with a shotgun. He also identified, in a photograph, the shotgun that he claimed Lilly had wielded during the incident.

A federal grand jury returned an indictment against Lilly on August 4, 2021, on one count of possession of firearms by a felon under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Lilly pleaded guilty on January 25, 2022, and a sentencing hearing was held on July 28, 2022. In accordance with the PSR, the district court calculated a Total Offense Level of 15,[2] which, given Lilly's Criminal History Category of III, corresponded to a Guidelines Sentencing Range (GSR) of 24-30 months. Lilly did not object to this GSR.

The district court then heard argument from the government, which recommended a 30-month sentence, and Lilly's counsel, who requested a 24-month sentence. The court also stated that it had received the parties' sentencing memoranda, the PSR, police reports, victim impact statements, and Doe's grand jury testimony. Having "carefully reviewed" these documents, the

---

[2] Lilly's base offense level was 14. See U.S. Sent'g Guidelines Manual § 2K2.1(a)(6)(A) (U.S. Sent'g Comm'n 2021). The district court applied a two-level enhancement because the offense involved four firearms, see id. § 2K2.1(b)(1)(A); a two-level enhancement for obstruction of justice, see id. § 3C1.1; and a three-level reduction for acceptance of responsibility, see id. § 3E1.1.

- 5 -

district court sentenced Lilly to 30 months of imprisonment followed by 3 years of supervised release.

In explaining its decision to fix the sentence at 30 months, the district court considered the factors enumerated in 18 U.S.C. § 3553(a), highlighting various facts about the offense and Lilly's past conduct.[3]  As part of its analysis, the court made a factual finding by a "preponderance of the evidence" that during the incident involving Doe on March 16, 2020, Lilly had wielded a firearm, not a club.  Consistent with the PSR's recommendation, the court did not apply an enhancement for possession of a firearm in connection with another felony offense, see U.S. Sent'g Guidelines Manual § 2K2.1(b)(6)(B) (U.S. Sent'g Comm'n 2021), finding that Lilly "had a right at that point in time to hold [Doe] at gunpoint until the police came."  Nevertheless, and over Lilly's objection, the court found the "facts [to be] aggravating" and thus took the incident into account in determining "where in the [G]uidelines [it] should be sentencing."

Lilly timely appealed.

---

[3]     For example, in discussing the nature and circumstances of the offense and Lilly's history and characteristics, see 18 U.S.C. § 3553(a)(1), the court referenced the number of firearms and the fact that one of the firearms had been readily accessible to Lilly's minor daughter; discussed Lilly's prior criminal history, including a previous gun possession conviction and violations of terms of supervised release; and cited victim impact statements that explained that Lilly had neglected his daughter in various ways.

"We review preserved challenges to a sentencing's procedural reasonableness under 'a multifaceted abuse-of-discretion standard whereby we afford de novo review to the sentencing court's interpretation and application of the sentencing guidelines, assay the court's factfinding for clear error, and evaluate its judgment calls for abuse of discretion.'" United States v. Rivera-Ruiz, 43 F.4th 172, 181 (1st Cir. 2022) (quoting United States v. Mendoza-Maisonet, 962 F.3d 1, 20 (1st Cir. 2020) (internal quotation marks omitted)). "[P]rocedural errors include 'selecting a sentence based on clearly erroneous facts,' such as where factual findings are 'based solely on unreliable evidence [and therefore] cannot be established by a preponderance' of the evidence, as they must." Id. (second alteration in original) (citations omitted) (first quoting United States v. Díaz-Rivera, 957 F.3d 20, 25 (1st Cir. 2020); and then quoting United States v. Castillo-Torres, 8 F.4th 68, 71 (1st Cir. 2021)). The requirement that a sentencing court base its factual findings on reliable evidence applies regardless of whether the court imposes a within-Guidelines sentence or departs or varies from the Guidelines. See id. at 182; Castillo-Torres, 8 F.4th at 71. To find clear error in the sentencing court's factual findings, "an inquiring court [must] form[] a strong, unyielding belief that a mistake has been made." Rivera-Ruiz, 43 F.4th at

181 (internal quotation marks omitted) (quoting Mendoza-Maisonet, 962 F.3d at 20).

Lilly argues that that the district court's "cho[ice] to believe the word of [Doe] over . . . Lilly when it came to whether . . . Lilly pointed a gun at [Doe]" on March 16, 2020, amounted to clear error. Doe's statement that Lilly had brandished a shotgun, Lilly contends, was unreliable for two reasons: first, because Doe lied about certain aspects of Doe's relationship with Lilly's daughter, and second, because Lilly told the police that Lilly had wielded a club, not a shotgun.

There was no clear error in the district court's finding, by a "preponderance of the evidence," that Lilly "actually [wielded] a gun during" the May 16, 2020 incident. On the contrary, the district court had ample reason to credit Doe's account of the incident over Lilly's.

First, Lilly's argument necessarily fails under our precedent in United States v. Williams, 10 F.3d 910 (1st Cir. 1993), because the district court supportably found Doe's grand jury testimony more credible than Lilly's self-serving statements to the police. See id. at 914 (permitting a sentencing court to rely on grand jury testimony when it has "adequate indicia of reliability"); see also United States v. Ayala, 290 F. App'x 366, 369 (1st Cir. 2008) (unpublished decision) ("[T]he [sentencing] court was entitled to rely, in part, on hearsay evidence, including

grand jury testimony . . . ."); U.S. Sent'g Guidelines Manual § 6A1.3(a) ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

Doe's sworn testimony to the grand jury reiterated his statement to the police after the May 16, 2020 incident that Lilly had wielded a shotgun. Doe attested that Lilly had "slammed the door open" with a "[s]hotgun" that had a "muzzle break," and that Lilly "had his left hand on the barrel and his right hand near the trigger, and . . . was pointing [the shotgun] probably a foot away from [Doe's] face." Further, Doe identified the shotgun in a photograph during the grand jury proceedings. This detailed testimony, which was "given under oath, subject to the penalties of perjury, in a formal grand jury proceeding," Williams, 10 F.3d at 914, is a far cry from the "uncorroborated, unsworn hearsay with no other marks of reliability" that has concerned this court in other contexts, Rivera-Ruiz, 43 F.4th at 185 (quoting Castillo-Torres, 8 F.4th at 72); see, e.g., id. at 181 (noting that "records of a defendant's prior arrests or criminal charges not resulting in conviction cannot themselves be relied upon at sentencing absent a finding that the underlying misconduct

- 9 -

actually occurred"); id. at 185 (rejecting the sentencing court's reliance on administrative complaints that "merely provided the alleged offense underlying the[] complaints, their date[s], and that their 'circumstances . . . remain[ed] unknown'"); Castillo-Torres, 8 F.4th at 72 (rejecting the sentencing court's reliance on a criminal complaint that lacked "indicia of trustworthiness" (quoting United States v. Colón-Maldonado, 953 F.3d 1, 10 (1st Cir. 2020))).  And Lilly's contention that Doe lied about certain aspects of Doe's relationship with Lilly's daughter, even if true, is insufficient to demonstrate that the district court clearly erred in crediting Doe's statements about the shotgun.

Even beyond Doe's grand jury testimony, the district court carefully explained why it "had good reason not to believe" Lilly's statement that he had wielded a club.  The court commented that Lilly had access to shotguns in the house and had a motive to lie to the officers because he was "keenly aware that he was not supposed to possess a firearm."  The court also noted that after the June 12, 2020 incident, Lilly falsely told officers that the shotguns belonged to his father and that Lilly did not have access to the locked bedroom where the firearms were kept.  The former statement was later contradicted by Lilly's father, who stated that he had never seen the shotguns; the latter statement was belied by the fact that upon arresting Lilly, officers discovered

a set of keys that matched the locks to the bedroom.  Further, as the district court recounted, Lilly pressured his daughter to lie to police about the firearms, leading to an enhancement for obstruction of justice.  In Facebook Messenger messages sent in July 2021, Lilly told his daughter to "tell them I never had access to the guns," "never touched them," and "did not have a key to that room"; exhorted her to "stick to that story"; and instructed her to "delete [her] messages."  The district court supportably found that given this "dishonesty to the police about the firearms" in relation to the June 12, 2020 incident, it was "likely that [Lilly] was doing the same thing on the night in question with [Doe] because he knew he . . . couldn't possess a firearm."

Accordingly, the district court did not clearly err in finding that Lilly lied about wielding a club and instead crediting Doe's statement that Lilly had brandished a shotgun.  Cf. United States v. Cates, 897 F.3d 349, 357 (1st Cir. 2018) ("[C]redibility determinations are part of the sentencing court's basic armamentarium." (quoting United States v. Bernier, 660 F.3d 543, 546 (1st Cir. 2011))).  Lilly's challenge to the procedural reasonableness of his sentence fails, and his sentence is affirmed.