# United States Court of Appeals
## For the First Circuit

No. 22-1387

UNITED STATES OF AMERICA,

Appellee,

v.

JEAN MARRERO BURGOS, t/n Jean Carlos Marrero Burgos,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Gelpí, Circuit Judges.

Luke Rosseel for appellant.

Jeanette M. Collazo-Ortiz, with whom W. Stephen Muldrow,
United States Attorney, Mariana E. Bauzá-Almonte, Assistant United
States Attorney, Chief, Appellate Division, and Gregory B. Conner,
Assistant United States Attorney, were on brief, for appellee.

April 2, 2025

**GELPÍ**, **Circuit Judge**. Defendant-Appellant Jean Carlos Marrero-Burgos ("Marrero") pleaded guilty to possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i) and possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). Prior to his sentencing, Marrero conceded that aggravating factors related to the offenses and his background warranted a sentence above the Sentencing Guidelines range of seventy-eight to eighty-four months. So he and the government jointly proposed a ninety-month sentence. The district court disagreed with that assessment. Citing, among other things, the dangerous nature of Marrero's firearm (a pistol modified to fire automatically), the amount and type of ammunition Marrero possessed, the prevalence of gun violence in Puerto Rico, and the high rate of recidivism among firearm offenders, the district court sentenced Marrero to a term of 108 months. That was too great of an upward variance, Marrero says. He insists that the district court's calculus was tainted by erroneous factfinding and undue reliance on community-based characteristics.

For the reasons explained below, we **affirm**.

I. BACKGROUND

## A. Factual Background[1]

On December 12, 2019, agents from the Bayamón Municipal Police Department ("BMPD") received confidential information suggesting that targets of an investigation were at Urbanización Cana Street #4 House XH in Bayamón, Puerto Rico. According to the tip, a green Honda Accord belonging to one of the suspects was parked outside the house. BMPD deployed a motorized unit along with preventive patrol units to further investigate.

As they approached the location at approximately 6:40 p.m., the BMPD units saw the green Honda Accord parked across the street from the house. Two men, including one holding a firearm, were standing beside the car. Upon seeing the marked patrol unit, they ran inside House XH. BMPD agents began pursuit, following them inside, through the main hall, and towards the back room of the house.

During the chase, officers spotted two other men in the back room of the house. One was holding a rifle, and the other, Marrero, was holding a pistol. When Marrero saw the other men flee through the back door, he attempted to do the same: he threw

---

[1] This appeal arises following a guilty plea, so we draw the facts from "the undisputed sections of the presentence investigation report ('PSR')" and "the transcripts of [the] change-of-plea and sentencing hearings." United States v. Fígaro-Benjamín, 100 F.4th 294, 299 n.1 (1st Cir. 2024) (quoting United States v. González, 857 F.3d 46, 52 (1st Cir. 2017)).

away his pistol, ran out the back door, and then, like the others, tried to jump over the fence. But he was stopped in his tracks and arrested by BMPD agents.

BMPD recovered much contraband from House XH. In the room where the agents first encountered Marrero, they found: the Glock pistol that Marrero was holding, which was modified to fire automatically and loaded with twenty-one rounds of .40 caliber ammunition in a high-capacity magazine; an Adidas black bag containing two drug ledgers, a bag of marijuana, and drug paraphernalia; a heat-sealed clear bag of marijuana; a bag containing cocaine; an orange plastic container holding 117 pills labeled IBU 800; and a red bag with 572 rounds of 5.56 caliber ammunition and nine rounds of 9mm ammunition. And in the living room, BMPD agents recovered sixty plastic vials containing a substance that tested positive for cocaine. According to laboratory results, there was a total of 13.82 grams of cocaine base (crack) and 656.7 grams of marijuana.

## B. Procedural History

On the same day of Marrero's arrest, he appeared before a U.S. Magistrate Judge, during which Marrero was ordered to be temporarily detained. A week later, a Grand Jury returned a four-count indictment against him, charging him with possession of a machine gun in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(B)(ii) (Count I); possession of a firearm in

furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count II); possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count III); and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) (Count IV). Marrero entered a plea of not guilty and was detained without bail.

Nearly two years later, on November 12, 2021, Marrero entered into a plea agreement with the government, agreeing to, among other things, plead guilty to Counts II and III of the indictment. The parties also assented to jointly recommend an upwardly variant sentence of ninety months of imprisonment regardless of Marrero's criminal history category.[2] Marrero conditionally waived his right to appeal so long as the sentence imposed on him did not exceed ninety-six months.

The probation officer thereafter prepared the PSR, calculating Marrero's total offense level as fifteen with a criminal history category of one. In turn, the PSR computed the total guidelines range for Counts II and III to be from seventy-eight to eighty-four months: sixty months for Count II (the statutory minimum, which must be served consecutively to any other counts) and eighteen to twenty-four months for Count III.

---

[2] The parties did not stipulate as to Marrero's criminal history category.

In advance of the sentencing hearing, the parties submitted sentencing memoranda in which they adhered to that joint proposal.

The district court disagreed with the parties' recommendation, however. After determining that the PSR had accurately calculated Marrero's guidelines range for Counts II and III, the district court opted to impose an upwardly variant sentence of eighty-four months on Count II and a sentence at the top of the guidelines range (twenty-four months) on Count III, to be served consecutively, for a total sentence of 108 months.

The district court pointed to several factors to support the imposition of its upwardly variant sentence. First, it focused on the dangerousness of machine guns, generally, and modified machine guns, specifically. Machine guns, the court stated, "can fire more than a thousand rounds a minute, which allows a shooter to kill dozens of people within a matter of seconds." "They are," the court continued, "the weapon of choice for those involved in drug trafficking, for intimidation, murder, and protection of drugs, and the proceeds of crime." The district court further noted that Marrero's pistol, which was modified to fire like a machine gun, presented additional risks: It is "difficult, if not impossible, to control due to [its] recoil or kickback," which creates a risk to bystanders near the intended target. That danger is further exacerbated, the court added, when the machine gun "is in the hands of a shooter with no training to use it properly."

The court also observed that there is a thirty-year minimum sentence associated with a conviction for possessing a machine gun in furtherance of drug trafficking.

Next, the district court considered Marrero's possession of a high-capacity magazine and the red bag containing nine rounds of 9mm ammunition and 572 rounds of 5.56 military caliber ammunition. And, finally, the court moved to a brief discussion of community-based considerations -- such as the prevalence of violent crime in Puerto Rico and the high rate of recidivism among firearm offenders -- and the specific need to protect the community from additional offenses by Marrero.

After the district court pronounced the 108-month sentence, Marrero's counsel objected and moved the court to reconsider its decision as it related to Marrero's possession of a machine gun and the amount of ammunition at the house. Those objections were overruled.

Marrero appealed.

## II. DISCUSSION

In the instant appeal, Marrero concedes that an upwardly variant sentence was justified as to Count II.[3] But, he argues,

---

[3] We are unmoved by Marrero's assertion that the district court "did too little to explain [its] decision to exceed the parties' joint recommendation on [Count III] by imposing a sentence at the top of the guidelines range for that charge." It is well settled that "a Rule 11(c)(1)(B) plea does not bind a district court to the recommendation in a plea agreement." United States

the district court committed two errors that resulted in too great of an upward variance -- twenty-four months too many, to be exact. See generally United States v. Morales-Vélez, 100 F.4th 334, 342 (1st Cir. 2024) (explaining that "we compare the variance to the guideline sentence, not the sentence recommended by the parties"). The first alleged error was the district court's factual finding at sentencing that Marrero possessed the red bag filled with nearly 600 rounds of ammunition. The second claimed error, as we understand it, is that the district court rested its decision too heavily on community characteristics and not enough on case-specific facts. The former challenge is procedural, see United States v. Caballero-Vázquez, 896 F.3d 115, 119-20 (1st Cir. 2018) (explaining that procedural errors include when "a sentence [is] based on clearly erroneous facts" (quoting United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008))), and the latter "can be characterized as either a [claim of] procedural error or a challenge to the substantive reasonableness of the sentence," United States v. García-Pérez, 9 F.4th 48, 52 n.1 (1st Cir. 2021) (alteration in original) (citations omitted).

---

v. Rodríguez-Reyes, 925 F.3d 558, 569 (1st Cir. 2019) (citations omitted). We grant such pleas no "decretory significance," nor do we "require a sentencing court to explain why it decided to eschew those recommendations." United States v. Cortés-Medina, 819 F.3d 566, 573 (1st Cir. 2016) (citations omitted).

We begin with the decidedly procedural challenge: the district court's factfinding at sentencing as to Marrero's possession of the red bag filled with ammunition. See United States v. Dávila-Bonilla, 968 F.3d 1, 9 (1st Cir. 2020) ("[F]irst we see if 'the sentence is procedurally reasonable (that is, free from non-harmless procedural error)' and then we see if 'it is substantively reasonable.'" (quoting United States v. Nuñez, 840 F.3d 1, 4 (1st Cir. 2016))). We review preserved procedural challenges for abuse of discretion, and in doing so, "we review the District Court's factual findings for clear error and its legal conclusions de novo." García-Pérez, 9 F.4th at 52 (citations omitted).

## A. The Possession of the Ammunition

It is well settled that a judge's factual findings made at sentencing need only be supported "by a preponderance of the evidence, so long as those facts do not affect either the statutory minimum or the statutory maximum." United States v. Munyenyezi, 781 F.3d 532, 544 (1st Cir. 2015) (first citing Alleyne v. United States, 570 U.S. 99, 103 (2013); and then citing Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)). The evidence to support the findings must be reliable, meaning it "must be based on 'information [that] has sufficient indicia of reliability to support its probable accuracy.'" United States v. Rivera-Ruiz, 43 F.4th 172, 181-82 (1st Cir. 2022) (alteration in original) (quoting

United States v. Morgan, 384 F.3d 1, 5 (1st Cir. 2004)). The district court can rely on "[e]ither direct or circumstantial evidence," and it is "free to draw commonsense inferences" therefrom. United States v. Rogers, 17 F.4th 229, 234 (1st Cir. 2021) (quoting United States v. Matthews, 749 F.3d 99, 105 (1st Cir. 2014)). Our clear-error review warrants reversal only if, after reviewing the record, we develop "a strong, unyielding belief that a mistake has been made." United States v. Newton, 972 F.3d 18, 20 (1st Cir. 2020) (quoting United States v. Oliveira, 907 F.3d 88, 92 (1st Cir. 2018)).

Here, the district court found that, in addition to the ammunition and high-capacity magazine attached to the modified Glock pistol, Marrero possessed the bag of ammunition -- holding nine rounds of 9mm caliber ammunition and 572 rounds of 5.56 caliber ammunition -- found in the room in which Marrero was located before his arrest.

Marrero challenges that conclusion. In his initial brief, Marrero contended that there was "no evidence tending to prove that the bedroom was his, or that the apartment inside which the bedroom was located was his residence." Instead, he represented that "[t]he only evidence before [the district court] connecting [him] to the ammunition was his 'mere presence' in the room from which the ammunition was recovered." In his reply brief, Marrero conceded that the government uncovered from his

- 10 -

phone a video of the red bag filled with ammunition and that his driver's license was later found in the same room as the bag of ammunition. He posits, though, that such evidence does not link him to the red bag: the license (found next to cocaine and drug paraphernalia) suggests "it was apparently being used to bag up narcotics"; and the video "is perfectly consistent with him happening upon the ammunition in the room to which he went to apportion the drugs that he admitted to possessing" and then choosing "to photograph [the ammunition] due to how voluminous it was."

Marrero's argument misses the mark. Possession can be either actual -- i.e., "immediate, hands-on physical possession" -- or constructive. United States v. Guzmán-Montañez, 756 F.3d 1, 8 (1st Cir. 2014). "Constructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object either directly or through others." United States v. McLean, 409 F.3d 492, 501 (1st Cir. 2005) (quoting United States v. Carlos Cruz, 352 F.3d 499, 510 (1st Cir. 2003)). Mere proximity to contraband is not enough to establish constructive possession; rather, there must be "some action, some word, or some conduct that links the individual to the contraband and indicates that he had some stake in it, some power over it." United States v. Fernández-Jorge, 894 F.3d 36, 43-44 (1st Cir. 2018) (first quoting United States v.

- 11 -

Rodríguez-Lozada, 558 F.3d 29, 40 (1st Cir. 2009); and then quoting McLean, 409 F.3d at 501).  Still, constructive possession may be proven "by relying entirely upon circumstantial evidence," which may "include[] evidence of an individual's 'control over the area where the contraband is found.'"  Id. at 43-44 (citations omitted).

The record contains undisputed facts from which the district court could reasonably have concluded that Marrero constructively possessed the bag of ammunition.  To begin with, the video of the red bag of ammunition on Marrero's phone raises a commonsense inference "that he had some stake in . . . [or] power over it."  United States v. Tanco-Baez, 942 F.3d 7, 26 (1st Cir. 2019) (quoting McLean, 409 F.3d at 501); see also United States v. Nuñez, 852 F.3d 141, 146 (1st Cir. 2017) (stressing that "the inferences that [the sentencing court] draws from th[e] evidence need not be compelled but, rather, need only be plausible").  Moreover, his driver's license found in the same room as the red bag of ammunition permits a commonsense inference that Marrero had some control over the area.  See United States v. Calle-Cardenas, 837 F.2d 30, 32 (1st Cir. 1988) (concluding that a factfinder could infer that the defendant "at the very least . . . had dominion and control over the contraband found in close proximity to his identification documents").  Given this record evidence, and the inferences that the district court was permitted to draw therefrom, we cannot say that its conclusion was clearly erroneous.

To be sure, this evidence is far from conclusive.  But our standard for reviewing a sentencing court's factfinding is not so exacting: We reverse only if we are left with a "strong, unyielding belief that a mistake has been made." United States v. Lilly, 65 F.4th 38, 41 (1st Cir. 2023) (quoting Rivera-Ruiz, 43 F.4th at 181).  We have no such belief here.  Nor are we swayed by Marrero's suggestion that we should draw different inferences from the same evidence.  As we have said, "when there are two plausible views of the record, the sentencing court's adoption of one such view cannot be clearly erroneous."  United States v. Carrero-Hernández, 643 F.3d 344, 351 (1st Cir. 2011) (quoting United States v. St. Cyr, 977 F.2d 698, 706 (1st Cir. 1992)).  So we glean no clear error in the district court's finding that Marrero possessed the red bag of ammunition.

**B. Outsized Reliance on Community Characteristics**

Marrero next challenges the district court's reliance on community characteristics to justify the upward variance. Marrero's position on this issue has varied throughout the course of this appeal.  In his initial brief, Marrero largely relied on our decision in United States v. Rivera-Berríos, where we vacated an upwardly variant sentence that was grounded only in a factor that "was already fully accounted for by the sentencing guidelines," and generic community-based concerns "[u]nmoored from any individual characteristics of either the offender or the

offense of conviction." 968 F.3d 130, 136-37 (1st Cir. 2020). Marrero maintained that the district court's decision here was plagued with similar flaws.

After Marrero submitted his brief but before he filed a reply, we decided United States v. Morales-Vélez, 100 F.4th 334 (1st Cir. 2024) and United States v. Aponte-Colón, 104 F.4th 402 (1st Cir. 2024), wherein we highlighted several material distinctions between cases like Rivera-Berríos and those like the present. We noted, on the one hand, that the defendant in Rivera-Berríos "pleaded guilty to [a] violation[] of 18 U.S.C. § 922 and w[as] consequently sentenced under U.S.S.G. § 2K2.1." Morales-Vélez, 100 F.4th at 342. And, we added, "concerns about 'the dangers posed by machine guns and the defendant's lack of need for such a weapon' are relevant to all machine gun crimes sentenced under section 2K2.1" -- thus "we have [had] no reason to believe that [those concerns] were not factored into the mix when the Sentencing Commission set the base offense level for the offense of conviction." Id. at 343 (alterations in original) (quoting United States v. Carrasquillo-Sanchez, 9 F.4th 56, 59 (1st Cir. 2021)). On the other hand, we observed, the defendants in Morales-Vélez and Aponte-Colón -- just like Marrero -- pleaded guilty to an offense under § 924(c)(1)(A)(i) and were sentenced under section 2K2.4(b) -- a different statute and different guideline from those at issue in Rivera-Berríos. See

- 14 -

Morales-Vélez, 100 F.4th at 342-43 ("The statutory regimes underpinning sections 2K2.4(b) [(the guideline at issue here)] and 2K2.1 [(the guideline at issue in Rivera-Berríos and García-Pérez)], and the text of the guidelines themselves, are fundamentally different."); Aponte-Colón, 104 F.4th at 417 (applying the same statute and guideline).

That distinction made a difference. Neither § 924(c)(1)(A)(i) nor section 2K2.4(b), we noted, "accounts for the nature of machine guns." Morales-Vélez, 100 F.4th at 344; see also Aponte-Colón, 104 F.4th at 419 ("Unlike in Rivera-Berríos . . . , the district court here did not base its sentencing decision on a factor that already was accounted for in the guidelines."). Crucially, we said, "the plain language of § 924(c)" unambiguously signals Congress's intent to punish more severely those who possess a machine gun in furtherance of drug trafficking. Morales-Vélez, 100 F.4th at 343. That is, the section immediately following § 924(c)(1)(A)(i) "explicitly discusses machine guns and provides for a much higher sentence -- thirty years minimum -- if one is involved." Id. at 343 (citing 18 U.S.C. § 924(c)(1)(B)(ii)). So, we concluded, a sentencing court may consider a defendant's possession of a fully automatic pistol -- "a machine gun for the purposes of . . . § 924(c)" -- as a valid basis to distinguish that

- 15 -

defendant's offense under § 924(c)(1)(A)(i) from the mine-run of other such offenses.  Id. at 339 n.3 (citations omitted).

We presume that the foregoing holdings necessitated a change in Marrero's contentions in his reply brief and at oral argument.  Indeed, following those decisions, Marrero properly has made several concessions pertinent to the resolution of this appeal.  First, Marrero now concedes that the offense to which he pleaded guilty (a violation of § 924(c)(1)(A)(i)) and the guideline pursuant to which he was sentenced (section 2K2.4(b)) do not take into account his possession of a machine gun, and thus, he admits, the district court had discretion to vary from the guidelines range based on the dangerousness of his firearm. Second, Marrero acknowledges that, unlike Rivera-Berríos, the district court here did consider a mix of individualized and community-based factors in passing sentence.

That brings us to his plaint of legal error.  His position now, as far as we can deduce, is that the district court gave undue weight to certain sentencing factors.  We have construed such challenges as either claims of procedural reasonableness or substantive reasonableness.  Compare United States v. Merced-García, 24 F.4th 76, 81 (1st Cir. 2022) (defining argument that "district court weighed 'community considerations' too heavily, giving unduly short shrift to [defendant's] personal circumstances" as claim of procedural error), and United States v.

- 16 -

Ruperto-Rivera, 16 F.4th 1, 5-6 (1st Cir. 2021) (analyzing claim that sentencing court "abuse[d] its discretion in balancing the section 3553(a) factors" through a "procedural lens"); with United States v. Mulero-Vargas, 24 F.4th 754, 758 (1st Cir. 2022) (characterizing claim that "the court 'plac[ed] too much weight on the nature and circumstances of the case and an insufficient amount of weight [on the defendant's] history and characteristics,'" as substantive (first alteration in original)), and United States v. de Jesús, 831 F.3d 39, 42-43 (1st Cir. 2016) (characterizing a similar argument as substantive).

We accordingly review Marrero's claims through both a procedural and a substantive lens.

### 1. Procedural Reasonableness

When a sentencing judge varies upward from the advisory guidelines range, "'it must justify the variance[]' and ensure that its justification 'is sufficiently compelling to support the degree of the variance.'" United States v. Mendes, 107 F.4th 22, 29 (1st Cir. 2024) (first quoting United States v. Rand, 93 F.4th 571, 577 (1st Cir. 2024); and then quoting Gall v. United States, 552 U.S. 38, 50 (2007)). The district court's explanation for the variance need not be exhaustive nor "precise to the point of pedantry." Rivera-Berríos, 968 F.3d at 134 (quoting United States v. Sepúlveda-Hernández, 817 F.3d 30, 33 (1st Cir. 2016)). Rather, the justification must present only the primary factors underlying

the sentence in a plausible and coherent manner. See id. (citing United States v. Rivera-Morales, 961 F.3d 1, 18 (1st Cir. 2020)); Mendes, 107 F.4th at 30. In other words, a "sentencing court[] must say enough to show an appellate court they 'considered the parties' arguments and had a reasoned basis for exercising their own legal decisionmaking authority.'" Morales-Vélez, 100 F.4th at 341 (quoting United States v. Colón-Cordero, 91 F.4th 41, 51 (1st Cir. 2024)).

Generally, the weight attributed to each sentencing factor is largely within the district court's informed discretion. See United States v. Hassan-Saleh-Mohamad, 930 F.3d 1, 9 (1st Cir. 2019). That task "'represent[s] a judgment call . . . for the sentencing court' alone to make." Ruperto-Rivera, 16 F.4th at 6 (quoting United States v. Madera-Ortiz, 637 F.3d 26, 32 (1st Cir. 2011)). And "[t]here is absolutely no 'requirement that a district court afford each of the section 3553(a) factors equal prominence,' as '[t]he relative weight of each factor will vary with the idiosyncratic circumstances of each case.'" Hassan-Saleh-Mohamad, 930 F.3d at 9 (second alteration in original) (quoting United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006)).

Notwithstanding the substantial deference we afford to a court's weighing of sentencing factors, we have held that "[i]t is possible for a sentencing judge to focus too much on the community and too little on the individual and, thus, impose a

sentence that cannot withstand the test of procedural reasonableness." United States v. Flores-Machicote, 706 F.3d 16, 24 (1st Cir. 2013). But procedural error generally does not lie when a district court grounds an upwardly variant sentence in a well-reasoned mix of case-specific and community-based characteristics, distinguishing the defendant's particular circumstances from the ordinary offense covered by the guidelines. See, e.g., id. (affirming sentence when the sentencing judge "directed individualized attention to the defendant's case, explicitly discussing the section 3553(a) factors as they related to the defendant"); see also United States v. Fuentes-Echevarria, 856 F.3d 22, 26 (1st Cir. 2017) ("The sentencing judge's discussion of these case-specific facts blunts [defendant's] claim that community factors improperly shaded his variant sentence.").

The record here amply demonstrates that "the district court sentenced [Marrero] in light of the totality of a myriad of relevant circumstances." Aponte-Colón, 104 F.4th at 419 (quoting United States v. Rivera-González, 776 F.3d 45, 51 (1st Cir. 2015)). Specifically, it considered: (1) Marrero's individual characteristics, including his juvenile and adult criminal history; (2) the dangerousness of Marrero's firearm; (3) the nature of the charges that were dismissed pursuant to the plea

agreement;[4] (4) the amount and type of ammunition possessed by Marrero; (5) the prevalence of gun violence in Puerto Rico; and (6) the high rate of recidivism among firearm offenders.

Our precedent unambiguously establishes -- and Marrero concedes -- that those are sound bases on which an upward variance may be justified.  See, e.g., Morales-Vélez, 100 F.4th at 342-44 (holding that the sentencing court did not err by considering the

---

[4] Marrero does not contest that the nature of the charges that were dismissed pursuant to the plea agreement is a permissible sentencing factor for a district court to consider.  Instead, he contends that the district court here did not consider the nature of the dismissed charge in arriving at his sentence, such that the nature of the dismissed charge cannot explain the district court's upward variance.  Though the court stated that "the guideline sentence is no less than 30 years" for "a drug trafficking crime" with a machine gun, Marrero presses that the explication was too cursory.  He contends that the district court needed to "state[] that [Marrero] had previously been subject to such a charge, that a machinegun charge had been dismissed as part of the plea deal, or that the decision to vary upward from the parties' above-guidelines recommendation was based on the dismissal of that charge."

We do not demand such exposition. See United States v. Guzmán-Montañez, 808 F.3d 552, 555 (1st Cir. 2015) ("'While the court ordinarily should identify the main factors upon which it relies, its statements need not be either lengthy or detailed' or 'precise to the point of pedantry.'" (quoting United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006))).  Indeed, we can "fair[ly] infer[] from the sentencing record" that, by referencing the thirty-year minimum immediately after explaining that Marrero possessed a machine gun for purposes of the relevant statute, the district court considered the dismissed charge under § 924(c)(1)(B)(ii) in fashioning the upwardly variant sentence. United States v. Ortiz-Pérez, 30 F.4th 107, 114 (1st Cir. 2022) (quoting United States v. Montero-Montero, 817 F.3d 35, 38 (1st Cir. 2016)).  And, as we said earlier, a district court has no mandate to explain why it decided to reject the parties' recommendation in a non-binding plea agreement. See supra n.3.

nature of machine guns and the amount of ammunition held by the defendant, neither of which was accounted for in the statute or applicable guideline); United States v. Vargas-Martinez, 15 F.4th 91, 100 (1st Cir. 2021) (noting that a district court may consider "the nature of the charges that were dismissed pursuant to the plea agreement in imposing an upwardly variant sentence" (citing United States v. Díaz-Rivera, 957 F.3d 20, 25 (1st Cir. 2020))); United States v. Rosario-Merced, 109 F.4th 77, 84 (1st Cir. 2024) (holding that district court may consider community characteristics in imposing an upwardly variant sentence).

Given the district court's well-reasoned and detailed discussion of the foregoing community-based and case-specific considerations, we are unpersuaded by Marrero's suggestion that the court gave undue weight to community-based characteristics or varied upward too much based on the nature of the firearm. Our review of the record does not reveal any "compelling indication that the court gave undue weight to" community-based characteristics. Aponte-Colón, 104 F.4th at 419 (quoting Rivera-González, 776 F.3d at 51). Marrero does not point us to any. Nor does he attempt to explain, in light of the district court's multifaceted rationale, how we should discern the precise weight the district court accorded to community-based characteristics. We are not convinced that we could. After all, "a variant sentence may be 'based on a complex of factors whose

- 21 -

interplay and precise weight cannot . . . be precisely described.'" United States v. Matos-de-Jesús, 856 F.3d 174, 179 (1st Cir. 2017) (quoting Martin, 520 F.3d at 92).

Likewise, we decline Marrero's invitation to impose upon district courts a bright-line limitation to their discretion to vary upward based on the nature of a firearm when the relevant offense and guideline do not account for the nature of said firearm. Marrero waived this argument by failing to develop it in his brief, opting instead to raise it for the first time at oral argument.[5] See Bernardo ex rel. M & K Eng'g, Inc. v. Johnson, 814 F.3d 481, 492 n.17 (1st Cir. 2016) (emphasizing that an argument "raised . . . for the first time at oral argument . . . is waived"); Zannino, 895 F.2d at 17. We need not tarry.

### 2. Substantive Reasonableness

We lastly turn to Marrero's substantive reasonableness argument. "In the sentencing context, 'reasonableness is a protean concept.'" Merced-García, 24 F.4th at 81 (quoting Clogston, 662 F.3d at 592). Each case is different: "[T]here is no one

_____

[5] Marrero, at certain points, conflates our case law regarding community-based and case-specific facts that district courts may consider when passing sentence. To be clear, when a defendant convicted under § 924(c)(1)(A)(i) possesses a machine gun, a district court's consideration of the machine gun is a case-specific fact. See Morales-Vélez, 100 F.4th at 343-44. In such a case, a district court's discussion of the dangers of machine guns, too, is a case-specific consideration, i.e., it distinguishes the specific defendant's offense from the mine-run of other such offenses. Id.; Aponte-Colón, 104 F.4th at 419.

reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." United States v. Polaco-Hance, 103 F.4th 95, 104 (1st Cir. 2024) (quoting United States v. Santiago-Lozada, 75 F.4th 285, 294 (1st Cir. 2023)). "[O]ur task is simply to determine whether the sentence falls within this broad universe," Rivera-Morales, 961 F.3d at 21, and we do so by "look[ing] for the hallmarks of a substantively reasonable sentence: 'a plausible sentencing rationale and a defensible result,'" United States v. Díaz-Lugo, 963 F.3d 145, 157 (1st Cir. 2020) (quoting Martin, 520 F.3d at 96).

For the reasons we have already explained, the district court's decision was supported by a plausible sentencing rationale based on a host of individualized and community-based facts: Marrero's history, his possession of a modified pistol (a machine gun for purposes of the offense), the amount and type of ammunition possessed by Marrero, the nature of the dismissed charges, and community-based characteristics related to Puerto Rico. See Mulero-Vargas, 24 F.4th at 758 (holding that a similar sentencing rationale "easily clears the plausibility hurdle"). And, given that we have upheld similar or greater variances for convictions under § 924(c)(1)(A)(i), we have no trouble finding that the twenty-four-month upward variance imposed here was a defensible result falling within the broad range of acceptable sentences. See, e.g., Morales-Vélez, 100 F.4th at 346 (affirming a sixty-month

- 23 -

upward variance where defendant possessed a machine gun; four magazines, two of which were high capacity; and 125 rounds of ammunition).[6]  Therefore, we hold that Marrero's sentence was substantively reasonable.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is **<u>affirmed</u>**.

---

[6]  Marrero's effort to draw support from factual similarities -- and distinctions -- in <u>Rivera-Berríos</u> and like cases is unavailing.  Marrero's "sentence must be reviewed based on the offense to which he pleaded guilty, and the applicable guideline, taking into account Congress's decision that the mandatory sentence for that offense did not factor in possession of a machine gun." <u>Morales-Vélez</u>, 100 F.4th at 346 ("When applying the guidelines, we begin with the underlying offense of conviction, not the underlying conduct." (citing U.S.S.G. § 1B1.1(a)(1))); <u>see also</u> <u>Aponte-Colón</u>, 104 F.4th at 418-19 (distinguishing <u>Rivera-Berríos</u>).